J-S44029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONIO PETERSEN | : | |
| | : | |
| Appellant | : | No. 3239 EDA 2017 |

Appeal from the Judgment of Sentence November 5, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001070-2014

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 31, 2018**

Antonio Petersen (Appellant) appeals from the judgment of sentence imposed following his convictions for possession of a controlled substance and possession with intent to deliver a controlled substance (PWID).[1]  Appellant's counsel, J. Matthew Wolfe, Esq. (Counsel), seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).  Upon review, we affirm Appellant's judgment of sentence and grant Counsel's petition to withdraw.

On October 1, 2013, Officer Dwayne Watson was performing plain clothes surveillance of the 2800 block of Cecil B Moore Avenue in Philadelphia, Pennsylvania.  At the time of the investigation, Officer Watson was an 18 year

_____

[1] 35 Pa.C.S.A. § 780-113(A)(16), (30).

veteran of the police force, having spent the previous 11 years assigned to the narcotics strike force. N.T., 9/9/14, at 3, 6. Officer Watson described the 2800 block of Cecil B Moore Avenue as an area "known for narcotics." *Id.* at 6. Officer Watson testified that he had conducted approximately 30 drug-related investigations on that block. *Id.*

Officer Watson observed Appellant standing with "three or four other males" in front of a corner store. *Id.* at 4. A short time later, a foot beat officer[2] came to the corner and directed the males to leave the corner. Officer Watson observed Appellant cross the street and wait on the opposite corner until the foot beat officer left the area. *Id.*

Thereafter, Officer Watson observed Appellant meet up with an unknown male. *Id.* at 5. The two engaged in a brief conversation, after which Officer Watson observed Appellant cross the street and retrieve an object that was white in color. The unknown male remained in place with United States currency in his hand. *Id.* Appellant then attempted to retrieve objects from the white object he had in his hand, however he was interrupted when the foot beat officer returned. Officer Watson then observed Appellant place the white object in his right back pocket, walk eastbound, and hand the object to another unknown male. *Id.* The unknown male then walked two blocks and dropped the object on the curb. *Id.*

---

[2] The foot beat officer was routinely patrolling the area and not involved with the surveillance investigation.

Officer Watson directed his backup officers to come to the area and stop Appellant. *Id.* at 5. Officer Gandarella stopped Appellant and recovered $259.00 from his person. Officer Watson directed the backup officers to the area where he observed the unknown male drop the white object, and officers recovered a Newport cigarette box containing five green tinted packets with an off-white powdery substance that tested positive for cocaine. *Id.*

Appellant was arrested and charged with the above offenses. On September 9, 2014, the trial court held a hearing on Appellant's motion to suppress the currency that was recovered from Appellant's person. The trial court denied Appellant's suppression motion and immediately proceeded to a bench trial, after which it found Appellant guilty of the two drug offenses. The trial court sentenced Appellant to 2 to 4 years in prison, followed by three years of probation. Appellant did not file a direct appeal.

On June 20, 2016, Appellant filed a *pro se* petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, seeking to have his direct appeal rights reinstated *nunc pro tunc*. The PCRA court granted the petition on September 26, 2017. On October 3, 2017, Appellant timely appealed to this Court. The trial court ordered Appellant to file a concise statement of errors complaint of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure and Appellant complied. On May 22, 2018, Counsel filed an ***Anders*** brief and petitioned for leave to withdraw with this Court.

- 3 -

There are particular mandates that counsel seeking to withdraw pursuant to *Anders* must follow. These mandates and the significant protection they provide to an *Anders* appellant arise because a criminal defendant has a constitutional right to a direct appeal and to counsel on that appeal. *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007). We have summarized these requirements as follows:

> Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.
>
> *Anders* counsel must also provide a copy of the *Anders* petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of *Anders,* this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with *Anders* or file an advocate's brief on Appellant's behalf).

*Id.* (citations omitted).

Additionally, there are requirements as to precisely what an *Anders* brief must contain:

> [T]he Anders brief that accompanies court-appointed counsel's petition to withdraw … must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of

record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d 349, 361 (Pa. 2009). When faced with a purported *Anders* brief, we may not review the merits of the underlying issues without first deciding whether counsel has properly requested permission to withdraw. *Commonwealth v. Wimbush*, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). If counsel has met these obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 354 n.5.

Instantly, we conclude that Counsel has complied with the requirements outlined above. Counsel has filed a petition with this Court stating that after reviewing the record, he finds this appeal to be wholly frivolous. Petition for Leave to Withdraw as Counsel, 5/22/18, at ¶ 2. In conformance with *Santiago*, Counsel's brief includes summaries of the facts and procedural history of the case, and discusses the issues he believes might arguably support Appellant's appeal. *See Anders* Brief at 7-12. Counsel's brief sets forth his conclusion that the appeal is frivolous and includes citation to relevant authority. *See id.* at 11-12. Finally, Counsel has attached to his petition to withdraw the letter that he sent to Appellant, which enclosed Counsel's petition and *Anders* brief. Counsel's letter advised Appellant of his right to proceed *pro se* or with private counsel and to raise any additional issues that he deems worthy of this Court's consideration.

Counsel's *Anders* brief raises two issues for our review:

[1.] The [c]ourt erred in failing to grant the Appellant's pretrial motion as the evidence presented did not support reasonable suspicion to search the Appellant or probable cause to arrest him.

[2.] The [c]ourt erred in finding the Appellant guilty as the evidence was insufficient to support the verdict.

*See* Statement of Matters Complained of on Appeal, 12/4/17, at ¶ 3, 5.

The first issue presented by Counsel in the *Anders* brief challenges the denial of Appellant's motion to suppress. Our standard of review when considering the denial of a motion to suppress is as follows:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Mason*, 130 A.3d 148, 151–52 (Pa. Super. 2015) (quotations and citations omitted).

Appellant argues that the police lacked probable cause to arrest him. *Anders* Brief at 11. Whether probable cause exists to justify an arrest "is determined by considering the totality of the circumstances."

*Commonwealth v. Holton*, 906 A.2d 1246, 1249 (Pa. Super. 2006) (citing

*Illinois v. Gates*, 462 U.S. 213 (1983)). "Under the totality of the

circumstances, a police officer must make a practical common sense decision

whether, given all of the circumstances known to him at that time, including

hearsay information, there is a fair probability that a crime was committed

and that the suspect committed the crime." *Id.* (quoting *Commonwealth v.*

*Taylor*, 850 A.2d 684, 687 (Pa. Super. 2004)).

Further, this Court has explained:

Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances. Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable cause decision.

*Id.* (quoting *Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super.

2005)).

In *Commonwealth v. Dunlap*, this Court addressed the issue of

probable cause incident to a warrantless arrest. 941 A.2d 671, 673 (Pa.

2007). In *Dunlap*, a trained, five-year-veteran officer was patrolling in a

"high-crime neighborhood" when he observed the appellant and another

person exchange money for an unknown object "without seeing any other suspicious activity." *Id.* The officer testified that he had conducted approximately 15 to 20 arrests in the general area in which he observed the appellant engage in the suspicious activity. Based on those facts, the appellant was apprehended and found to possess crack cocaine. The trial court denied the appellant's motion to suppress the evidence and this Court, sitting *en banc*, affirmed in a 5-4 decision, concluding that probable cause existed to support the warrantless arrest and search. Notably, this Court emphasized that: (1) an experienced narcotics officer made the observations; (2) the transaction took place in an area known by the officer in his professional experience to be a high drug-crime area; and (3) based on the officer's training and experience as an officer with knowledge of the area, the officer reasonably concluded he has probably witnessed a drug transaction. *Id.* at 674.

However, on allowance of appeal, our Supreme Court reversed, holding that training and experience is not a "stand-alone" factor to be considered in the probable cause analysis. Specifically, the Court held that "police training and experience, without more, is not a fact to be added to the quantum of evidence to determine if probable cause exists, but rather a 'lens' through which courts view the quantum of evidence observed at the scene." *Id.* at 675. The Court concluded that a single transaction observed by an officer in

a "high-crime" area, without more, was insufficient to establish probable cause, despite the arresting officer's training and experience.

Subsequently, in **Commonwealth v. Thompson**, 985 A.2d 928 (Pa. 2009), the Court revisited the issue. In **Thompson**, Philadelphia Police Officer Orlando Ortiz was in plainclothes with his partner in an unmarked vehicle. Officer Ortiz saw a parked car, next to which the appellant was standing. Officer Ortiz observed the appellant hand the driver some money and the driver gave the appellant a small object in return. Believing the men to have engaged in a drug transaction, Officer Ortiz stopped appellant and recovered from his pocket a packet of heroin. The evidence established that Officer Ortiz:

> was a nine-year veteran of the police force who was on undercover patrol in a high crime area that had been designated by the Philadelphia Police Department as an Operation Safe Streets neighborhood. In addition[,] Officer Ortiz was personally familiar with heroin sales activity in the neighborhood, heroin packaging, and hand-to-hand drug exchanges on the street. In drawing the nexus between his experience and the observations he made, Officer Ortiz testified that he had seen this type of "exchange done several hundred times" on the street and had made several hundred narcotic arrests of this very type.

**Id.** at 936.

At the outset, the **Thompson** Court noted that the **Dunlap** majority had "rejected the notion that police experience is worthy of the label 'factor,' but it conceded that such experience informs the court's decision so much that it enables the court to find probable cause where it otherwise would be unable to do so." **Thompson**, 985 A.2d at 935. However, the Court also noted that

- 9 -

the majority in *Dunlap* had acknowledged the importance of experience and training:

> We do not seek to minimize the experience gained through years serving on the police force. Quite to the contrary, we recognize that many officers, particularly those with specialized training, are able to recognize trends and methods in the commission of various crimes. For instance, an officer who has specialized in drug crimes may be more suspicious that a package contains illegal narcotics because of the form of packaging used to conceal those drugs. He or she may recognize criminal activity where a non-police citizen may not. However, a court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence. By doing so, a court aware of, informed by, and viewing the evidence as the officer in question, aided in assessing his observations by his experience, may properly conclude that probable cause existed. This is true even where the court may have been unable to perceive the existence of probable cause had the court viewed the same evidence through the eyes of a reasonable citizen untrained in law enforcement.

*Id.* (quoting *Dunlap*, 941 A.2d at 675–76) (emphasis added in *Thompson*).

Ultimately, the Court concluded that an officer's experience "may be fairly regarded as a relevant factor in determining probable cause" but that "an officer's testimony in this regard shall not simply reference 'training and experience abstract from an explanation of their specific application to the circumstances at hand.'" *Thompson*, 985 A.2d at 935.

In light of our Supreme Court's pronouncements in *Dunlap* and *Thompson*, we conclude that, here, the police possessed probable cause to arrest Appellant. First, Officer Watson is an 18 year police veteran with 11 years' experience on the narcotics strike force. Officer Watson received

significant training related to narcotics work and participated in "thousands" of narcotics investigations, with at least 30 investigations occurring in the immediate area where Appellant was arrested. N.T., 9/9/14, at 6. Officer Watson's training and experience in narcotics, and in particular, his experience with drug transactions in the area where Appellant was arrested, led Officer Watson to believe that he witnessed a drug sale. *See id.* at 23.

Given the totality of the circumstances, Officer Watson's experience reasonably led him to believe that he had witnessed Appellant engage in a drug transaction. Together, these facts were sufficient to establish probable cause and, accordingly, Appellant's suppression issue lacks merit.

The second issue presented by Counsel in the **Anders** brief challenges the sufficiency of the evidence relating to his convictions of possession of a controlled substance and PWID. Preliminarily, we observe that Appellant failed to identify with specificity his argument on appeal in his Rule 1925(b) statement.

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant failed to adequately identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all.

**Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa. Super. 2006) (citation omitted), **appeal denied**, 919 A.2d 959 (Pa. 2007); Pa.R.A.P. 1925(b)(4). Moreover, our Supreme Court noted that in complex criminal proceedings, a

- 11 -

vague Rule 1925(b) statement would not alert the trial court to the issues challenged on appeal. **See Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) ("It may be possible in more complex criminal matters that the common pleas court may require a more detailed statement to address the basis for a sufficiency challenge.").

Here, Appellant was convicted of two offenses. Although Appellant's Rule 1925(b) statement averred that "the evidence was insufficient to support the verdict," the statement did not specify which conviction Appellant was challenging or identify any element of the offenses that were allegedly not established. Accordingly, Appellant has waived his challenge to the sufficiency of the evidence. **See Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (when challenging the sufficiency of the evidence, an appellant's Rule "1925 statement must 'specify the element . . . upon which the evidence was insufficient' in order to preserve the issue for appeal.").[3]

In sum, we agree with Counsel that Appellant's appeal is wholly frivolous and grant his petition to withdraw from representation.

Judgment of sentence affirmed. Petition to withdraw granted.

---

[3] Even in the absence of waiver, we would conclude that the trial court's determination, *i.e.*, that "the conduct of Appellant, the hand-off of the Newport box containing packets of cocaine, and the currency on his person, provided ample evidence from which delivery of cocaine and possession with intent to deliver could be inferred," **see** Trial Court Opinion, 1/26/18, at 7, is supported by the record and free of legal error. **See Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/31/18</u>